Plaintiff brought this suit to annul and set aside a tax deed to defendant of an undivided one-half interest in and to the S 1/2 of SW 1/4 of Section 15, T-4-S, R-8-W, containing approximately 80 acres, situated in the Parish of Beauregard. The tax sale was made on June 19, 1943, for the delinquent taxes of 1942 due on the whole of the property. A certified copy of the tax deed was attached to the petition and was made a part thereof. According to the tax deed, at the tax sale, no particular portion of said property was pointed out by the tax debtor. The Sheriff, ex officio tax collector for the Parish of Beauregard, then offered the least portion of said property for an amount sufficient to pay the taxes, interest and costs due thereon. Under such offering and in response to a bid submitted by the defendant, the sheriff, ex officio tax collector, proceeded to offer the undivided one-half interest in the whole of said property for the taxes, interest and costs due by the said plaintiff, and adjudicated the said undivided one-half interest in the said property to defendant, he being the last and highest bidder.
The plaintiff alleges that the adjudication and the deed executed thereon are null, void and without legal effect because the 80 acre tract of land, being without improvements, was at the time of the sale and *Page 80 
is now divisible in kind of equal area in portion and value; and since the property was and is divisible in kind, the Sheriff, ex-officio tax collector, had no authority to sell an undivided one-half interest in and to said property.
Defendant, in answer, contends that the adjudication and sale are proper and legal in all respects. He particularly denies that the property was and is divisible in kind and further denies that the property could have been offered in separate or specific smaller tracts less than the whole.
The trial of the case resulted in a judgment, with written reasons assigned, in favor of plaintiff and against the defendant annulling and setting aside the tax sale and ordering its cancellation from the records of the Parish of Beauregard, upon plaintiff reimbursing the defendant for the taxes, interest and costs. Defendant has appealed.
Defendant filed in this court an exception of no cause of action, contending that since, according to plaintiff's allegations, the tax sale was made in strict compliance with the provisions of the Constitution of 1921, as amended, Article 10, Section 11, which said Constitutional Article is self-operative, plaintiff's petition does not show that the tax sale of the undivided interest in the land in question was in violation of any law. In the alternative, defendant contends that if any act or acts of the legislature might have been violated, then and in that event such legislation is inconsistent with the constitutional provisions supra and has been repealed or is therefore unconstitutional.
The consideration of the exception necessarily embodies the consideration of the merits of the case, and we shall treat the two as one.
Article 10, Section 11 of the Constitution of 1921, reads as follows: "There shall be no forfeiture of property for the non-payment of taxes, but at the expiration of the year in which said taxes are due, the collector shall, without suit, and after giving notice to the delinquent in the manner provided by law, advertise for sale in the official journal of the parish or municipality, provided there be an official journal in such parish or municipality, or if not, then, as is now or may be provided by law for sheriff's sales, the property on which the taxes are due in the manner provided for judicial sales, and on the day of sale he shall sell such portion of theproperty as the debtor shall point out; and in case the debtorshall not point out sufficient property, the collector shall,at once and without further delay, sell the least quantity ofproperty which any bidder will buy for the amount of taxes,interest and costs. The sale shall be without appraisement * * *". (Italics ours.)
A research of the several constitutions of the State shows that such a provision did not exist in the Constitution of this State prior to the Constitution of 1879. We find, however, practically verbatim the part of Section 11, supra, in the Constitution of 1879 as Art. 210, and in the Constitutions of 1898 and 1913 as Art. 233.
As stated supra, prior to the constitution of the State adopted in 1879, there were no constitutional provisions relating to the tax sales of real property. However, the Supreme Court, in the case of McDonough v. Elam et al.,1 La. 489, 20 Am. Dec. 284, had under consideration the question of whether the tax collector could legally sell an undivided interest in several lots. In disposing of that question, the Supreme Court stated:
"We are not acquainted with any difference between a forced sale for taxes, and one under a fi. fa. except the mode and period of advertising, and the form of the deed.
"A sheriff must seize the property he sells, and have it ready to show, or point out to the purchaser that he may possess himself of it, if it be susceptible of actual possession. He cannot sell an undivided part of the defendant's property or chattel or piece of land. For many a purchaser would be deterred from buying that of which he could not obtain the possession without entering into a contract, or instituting a law suit, and the defendant, though he must submit to have a determinate and specific part of his property taken away cannot be compelled to have a co-owner unnecessarily and gratuitously imposed on *Page 81 
him with whom he must have a voluntary or legal partition.
"In the present case less than ten dollars were due by one of the parties and __________ by the other, he therefore should have begun by selling one lot and then another, till he had raised a sufficient sum, or at least put up one determinate square, without selling at once, twelve indefinite lots.
"Surely if a man has twenty Negroes on whom taxes are due, one of these may be taken and sold — and more if necessary: but the sale of the twentieth of all the slaves, would likely be productive of unnecessary sacrifice to the owner, and trouble to him and the purchasers.
"He who sells his own property, may do so in any manner which will be agreed on by a vendee, but an officer who makes a forced sale has no right to carve out any particular estate unnecessarily and gratuitously, without the consent of the owner.
"We conclude that the sale made by the treasurer, was irregular."
The Constitution of 1879, Art. 210, provides that: "There shall be no forfeiture of property for the non-payment of taxes, State, levee district, parochial or municipal, but at the expiration of the year in which they are due the collector shall, without suit, and after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication except in case of unknown owner) advertise for sale the property on which the taxes are due in the manner provided for judicial sales, and on the day of sale he shall sell suchportion of the property as the debtor shall point out, and incase the debtor shall not point out sufficient property, thecollector shall at once and without further delay sell theleast quantity of property which any bidder will buy for theamount of the taxes, interest and costs. The sale shall be without appraisement," etc. (Italics ours.)
When this Constitutional Article was adopted, it is reasonable to presume that the members of the Constitutional Convention were cognizant of the holding of the Supreme Court in the case of McDonough v. Elam, supra, that a sale of an undivided interest in a tract of land divided (or subject to be divided) in lots or squares was improper, otherwise the Convention would have expressed themselves differently.
In the case of The Gulf States Land Imp. Co. v. Succession of Fasnacht, 47 La. Ann. 1294, 17 So. 800, 801, decided in 1895, the Supreme Court had under consideration the annulment of a tax sale as being in contravention of Art. 210 of the then Constitution and the interpretation of that portion of the article relative to the sale of the least quantity of the property to be sold. The following excerpt from that decision is apropos in this case: "As Burroughs puts it, dealing with statutory requisites not stronger, if as emphatic, as our constitution, requiring the least quantity to be sold: The same principle would be enforced by the courts if there was no statute. The general principle as to sales by sheriffs and tax collectors is often enforced on grounds of equity and reason, which forbids selling a Whole tract when a few acres would be sufficient. Burroughs, Taxation, c. 15, § 113. It would be more satisfactory if legislation had provided the method of division for sale by the tax collector of land assessed for taxes inconsiderable in proportion to the value of the property. Still, we cannot hold the constitutional requirement in this respect to be less stringent because of the absence of such legislation. In this case there were two distinct portions of property, each, too, susceptible of at least the division of setting apart the quantity apt to produce readily the sum required to discharge the small amount of unpaid taxes. We cannot appreciate that any serious attempt was made to comply with the requirement of selling the least quantity. No specific quantity was offered. There is the statement in the deed that the entire property was the least quantity any one would purchase, and, in the testimony, that the collector first offered to sell a portion, and, there being no bid, he proceeded to sell the whole. This imports no compliance with his duty. That was to offer for adjudication a portion, so thatthe purchaser would know the extent and situation of theproperty proposed to be sold, and so that delivery could bemade. Nothing of the kind was done or attempted." (Italics ours.) *Page 82 
Again, the Supreme Court, in the case of Bristol v. Murff, 49 La. Ann. 357, 21 So, 519, decided on February 1, 1897, had under consideration Article 210 of the Constitution. The following extract from this decision is appropriate: "The failure of the tax collector to comply with Article 210 of the constitution is more serious than the other reasons alleged for the nullity of the sale. The tax deed is prima facie evidence of a valid sale. Its recitals, however, are not conclusive, but may be contradicted as to the essentials required for a valid tax sale. One of these essentials is that the tax collector shall 'sell the least quantity of property which any bidder will buy for the amount of the interest, taxes and costs.' * * * The lot contained 197 1/2 acres. It was easy of subdivision, and could have been offered in less quantity than the whole tract. * * * Whenever the property can be conveniently offered in less quantity than the entire tract, the Compliance with the article of the constitution is imperative. In municipalities, when the lots have a designated size, it is impractical to offer less than the minimum size of the lot prescribed by municipal ordinances." The court approved its holding in the case of Gulf State Land Improvement Co. v. Succ. of Fasnacht, supra.
The effect of these decisions is that, to be in accord with the then constitutional mandate, the tax collector, when the property offered for sale is easy of subdivision, shall offer a subdivision of the said property and when the said property is not easy of subdivision then he shall offer for sale the whole of the property or an undivided interest therein.
In line with the suggestion of the Supreme Court in the case of Gulf State Land Improvement Co. v. Succ. of Fasnacht, supra, that the legislature should provide the method of division for sale by the tax collector of land assessed for taxes, Section 64, Act No. 170 of 1898 (Dart's Statutes, Sec. 8491), was passed. That section reads as follows: "The tax sale shall convey and the purchaser shall take the whole, if it is the least quantity or a part of the whole or an undivided interest, if the property is not divisible in kind, of the property assessed to the delinquent tax-payer. It being the intention of this section, that the purchaser shall only bid an amount to cover all accumulated taxes, interest, penalties and costs and the collector shall not entertain a bid in excess thereof, and if there are bidders, the collector shall require the bid or bids to be for a lesser portion of the whole property, sufficient in quality (quantity) to satisfy the aggregate of all taxes, interest, penalties, and costs." If the suggestion of the Supreme Court did not prompt the legislature to adopt this section, then it cannot but be said that the statute embodies the interpretation by the Supreme Court of Article 210 of the Constitution of 1879, and cannot be said to be in conflict with said Article 210. It is not a legislative application and interpretation of the phrase or clause shall "sell the least quantity of property", but as stated again it is merely a procedural legislation of the application and interpretation of that clause as evidenced by the Supreme Court's decisions, supra, which said procedural legislation is an entirely reasonable one.
[1] Since that phrase or portion of Article 210 of the Constitution of 1879 is verbatim the same as found in Article 10, Section 11 of the Constitution of 1921, and since Section 64 of Act No. 170 of 1898 is not in conflict with Article 210 of the Constitution of 1879, it then follows, as night the day, that the said Section 64 is constitutional with regard to Article 10, Section 11 of the Constitution of 1921. The Constitutional Convention of 1921 must have taken cognizance of the decisions of the Supreme Court relative to the interpretation of Art. 210 of 1879 since it enacted said Section 11 practically verbatim, particularly so the phrase under discussion.
In the language of the trial judge, "The above described property comprises approximately 80 acres of rural land located in a sparsely settled part of the parish. A public road runs along the west side of the tract, and this road is the only practical existing means of ingress and egress to and from any part of such land. No houses, buildings, fences, wells or other *Page 83 
improvements are located on the property. Approximately 40% of the property is denuded, cut over highland and the remaining 60% is low swampy land, having a growth of hardwood, pine and underbrush. The headwaters of a creek cross this land and a large portion of the property floods annually and remains under water for several months at a time.
"Insofar as the surface of this property is concerned, it is obvious that it can be divided in kind. The dividing line may run north and south, east and west, or in any other direction, or it may consist of natural markings such as the creek which crosses the land."
"Under the provisions of the above cited act, the tax collector is authorized to sell an undivided interest in the property assessed to the delinquent taxpayer only when such property is not divisible in kind. Neither the tax collector nor the Court is allowed to disregard the rules prescribed by the statute and to sell or maintain sales for taxes made in a manner different from that prescribed by law.
* * * * * *
"Defendant contends arguendo that a division of this property in kind would cause a diminution of its value or loss or inconvenience to one of the owners, and for that reason a division in kind is prohibited by Articles 1336, 1339 and 1340 of the Revised Civil Code. These articles of the Civil Code relate to judicial partitions of property belonging to co-heirs or co-owners where it is necessary that each co-owner receives a portion of the property which will correspond in value to his interest.
"* * * It might be mentioned, however, that in these articles of the Civil Code two types of property are recognized, namely, property which is indivisible by nature and property which cannot be conveniently divided. In a judicial partition neither type of property may be partioned in kind, whereas in a tax sale all types of property, except that which is indivisible by nature, must be offered for sale or sold in separate portions. In a tax sale, if the property is divisible by nature an undivided interest in the property may not be sold even though the property cannot be conveniently divided within the meaning of Article 1340 of the Revised Civil Code. This court does not consider the 80 acre tract of unimproved land involved in this suit to be indivisible by nature."
[2] During the trial of the case, the defendant offered to prove that the property involved had potential mineral value or, as expressed by his counsel, "might produce oil, gas or other minerals until proved dry." Plaintiff objected to the admissibility of this evidence as being irrelevant and immaterial to the issues of the case, which objection was sustained. Defendant complains of the ruling of the lower court. From the record, we gather that such evidence excluded consisted of testimony or written documents to the effect that other landowners in the neighborhood had leased their properties for mineral development. There is no evidence in the record that the land in question was within any proven oil, or other mineral territory. The ruling was correct. The evidence sought to be introduced was irrelevant and immaterial to th issue in the case and that is, the divisibility, vel non, by nature of the property at the time of the tax sale.
The defendant cites and strongly relies on the case of Gulf Refining Co. v. Hayne et al., 138 La. 555, 70 So. 509, L.R.A. 1916D, 1147, Ann.Cas.1917D, 130, in substantiation of his position that the evidence was admissible. Suffice it to say that the mere reading of this case will show that it is altogether inapposite to our case.
[3] Since we agree with the trial judge that the eighty acre tract of land was easily divisible into lots of equal area and value, and applying the decisions, supra, of the Supreme Court to this case, we find that the judgment of the trial court is correct.
For these reasons, the judgment appealed from is affirmed. *Page 84